Thank you, Your Honor. I appreciate it. And may it please the Court, Rory Kaye, Counsel of Record for Plaintiff Appellant Brian Sciara in this matter. Judge Smith, if I may, I would like to shoot for two minutes of rebuttal time. Yeah, we'll try to help you, but you've got to kind of watch the clock, okay? Sure. So, Your Honors, we view this as a straightforward case of specific personal jurisdiction. When Mr. Sciara's complaint begins, he owns a Nevada business called CapFund that he spent years building through hard work. When his complaint ends, Mr. Campbell has tricked Mr. Sciara into transferring CapFund out of the state and into Mr. Campbell's exclusive control in Arizona, and then Mr. Campbell runs away with all of those assets. Counsel, I— In between those two points— We've read the complaint, I mean, in your brief, so we know the factual background, but I'd like to ask you about this. As I look at the record, it seems like, with respect to the jurisdictal allegations, you have some that were part of the record that was before the district court, and another set with a lot of additional things in the motion for reconsideration. Would you please tell me what allegations regarding jurisdiction are contained in the previous record and were addressed in the motion to dismiss, as opposed to the ones that were added in the motion for reconsideration? Sure, Judge Smith. I would direct you to the complaint. What I view the key paragraphs being paragraph 11, paragraph 12, paragraph 14, and paragraph 16. In those, there are allegations for Mr. Sciara dealing with the negotiations between the parties. In paragraph 11, you have negotiations related to the formation of this business partnership between the gentlemen. In paragraph 12, you have allegations about sort of the activities and, again, negotiations that they went through. In paragraph 14, you have Campbell entering Nevada physically to conduct business. You also have him entering Nevada virtually on almost a daily basis to deal with Mr. Sciara. And then in paragraph 16 of that complaint, we have the negotiation of the ultimate merger of cap fund that I referenced. So those were all in the complaint. I will add— You agree that for purposes of this appeal, that the only allegations that we should consider for purposes of whether the motion was to dismiss was appropriately granted are those that are contained in the complaint, as opposed to those that were added by the motion for reconsideration. Do you agree with that? Judge Smith, yeah, you're correct. It's sort of a two-part answer to your question, is that fundamentally, we agree with your statement that the only proper reference was the allegations in the complaint. In fact, Mr. Campbell's counsel admitted that down below, that this was a non-evidentiary hearing. And so the appropriate reference point is the allegations in the complaint. I think where things got a little bit distorted here, Judge Smith—and this is sort of a procedural first for me—is that by the time the motion to dismiss was heard, we had conducted discovery, we had completed discovery, and Mr. Scharr had no indication as we went into that hearing, and really even coming out of it, that there were any infirmities in the complaint. It wasn't until we got the dismissal order that we found out that the district court believed there were some ambiguities in that pleading, and we tried to get things back on track. Counsel, I have a question similar to that's at ER 266 and 267. My understanding, but maybe I'm wrong, was that that was submitted as part of the motion to dismiss record and not as part of the recon record. Am I correct or not correct on that? Judge Bennett, you're correct. Mr. Scharr submitted a short declaration in opposition to the motion to dismiss, identifying that Mr. Campbell had used certain Nevada-based assets to form Sprout, and then Mr. Scharr, once again, we completed discovery, provided a more substantial declaration on reconsideration. So, for example, the allegation about the Nevada-based merchant account and the EIN for the Nevada-based business were before the district court when the district court ruled on the motion to dismiss, as opposed to having been later given to the district court on the recon stage. Correct, Judge Bennett. Yes, the allegations about the merchant account and the other assets that were used to form Sprout were all before the district court at the motion to dismiss stage. And really, the first key issue we've identified in our briefing is sort of the district court's application of Waldron B. Fiore as the controlling case. Candidly, your honors, we believe that that case is a poor fit for the facts that are alleged here in Waldron B. Fiore. Of course, the plaintiff was outside the forum state. The defendant was outside the forum state when the tortious activities occurred, and so there was no fair warning, if you will, to the defendant in Waldron that he may be hailed from Georgia all the way to Nevada. This complaint is different in that it alleges the men were close personal friends. They had met in Nevada. Mr. Campbell knew that he was negotiating and conducting business with a Nevada resident, and so there is no distinction for jurisdictional purposes between Mr. Campbell's contacts with Mr. Schara and Mr. Campbell's contacts with the state of Nevada. Because again, during the entirety of this, Mr. Schara was in Nevada, and Mr. Campbell was entering both physically and virtually. So that's why we made the point in our briefs that we believe that the Burger King case is more with you that there is sufficient allegations of purposeful availment for the contract claim. Why does that get you to the appropriate standard for purposeful direction with regard to the tort claim? So I'm having trouble seeing how you get across the finish line on the tort claim, even if I were to agree with you on the contract claim. Sure, Judge, but really what we're alleging there, and I suppose the best way to look at this, is that this asset, the new entity Sprout Financial, is in many ways a tool of Mr. Campbell's tortious deception here. The idea was he was using Sprout in a way to trick Mr. Schara into transferring cap fund into Sprout before Mr. Campbell ultimately locks him up or locks him out and takes away the assets. So the specific allegations I would point you to, Your Honor, are you can find them in paragraph 14 of the complaint. You see Mr. Campbell, Mr. Schara's alleged that Mr. Campbell divided his time between Nevada and Arizona. He physically entered and he was using Sprout in a way to carry out his tortious deception. Mr. Schara alleges several acts that Mr. Campbell took on behalf of Sprout, but really the idea there is he's using that as a mechanism to carry out his theft. I think that's one of the problems we ran into at the district court, is the district court's dismissal order creates a sort of artificial distinction between acts that Mr. Campbell personally performed in Nevada and acts that he performed on behalf of Sprout. There's no difference there because Sprout is the mechanism or the tool of the theft. I see I'm down to two minutes. I would like to answer any questions you have. Thank you, Your Honor. Okay. Farewell. Mr. Cunemoto, please. Good morning, Your Honors. May it please the court. This action concerns Mr. Schara's claims that Mr. Campbell breached an alleged Oro agreement to give Schara an ownership interest in and a role in the operation of Sprout Financial, which is a Delaware limited liability company with its principal place of business in Arizona. The district court concluded, based upon the pleadings and the evidence submitted with Mr. Campbell's motion to dismiss, that it lacked jurisdiction over Campbell, and the district court later denied Schara's motion for reconsideration. Campbell respectfully requests that these orders be affirmed. There are two motions at issue, as you are well aware. First, Mr. Schara is appealing the district court order granting Mr. Campbell's motion to dismiss for lack of personal jurisdiction. While the court reviews de novo the district court's dismissal for lack of personal jurisdiction, the factual findings underlying the district court's jurisdiction determinations are reviewed for clear error. Secondly, Mr. Schara is appealing the district court's denial of his motion for reconsideration filed pursuant to rule 59. The court reviews a denial of such motion for abuse of discretion. Here, because footnote one to the appellant's reply brief, which is docket number 24, makes clear that appellant is not contending on appeal that the district court erred in finding it did not have general jurisdiction over Campbell, Mr. Campbell would not be addressing general jurisdiction, which is not at issue in this appeal. But in regard to specific jurisdiction, the district court properly concluded that Mr. Campbell did not purposefully avail himself of the benefits of doing business in Nevada or purposefully directed his activities towards Nevada to support specific jurisdiction. In making the determination, the court considers actions by the defendant himself that create a substantial connection with the foreign state. Affirmative conduct, which allows or promotes the transaction of business within the foreign state and prior negotiations and contemplated future consequences and the terms of the contract in the party's actual course of dealing. The district court probably they dealt with each other in both Arizona and Nevada, correct? Well, that is correct. Okay. And and the plaintiff and his assets were in Nevada. It is alleged that yes. That go ahead that that that cap fund is a Delaware company. It's it's also alleged that plaintiff resided in Nevada. That's not in dispute, right? That is correct. And he's alleged his assets that were put into this business were in part in Nevada, right? I think that is a fair characterization. And then when I look at paragraph three of the the declaration that he submitted for the motion to dismiss, he says that when Sprout was first launched, it needed a merchant account in which to collect and disperse money received from the business that it was doing for the Nevada based company. And he arranged to use information from the Nevada based merchant account and the EIN number to apply and receive a merchant account for Sprout. Why why doesn't that get him over the threshold for the contract based claims? Well, first of all, with respect to the merchant account, and I believe the merchant account processing agreement is attached as an exhibit to the opposition to the motion to dismiss. It is on citing ER 268. It does reference cap fund financial, but it identifies cap fund financial is having an Arizona address. Moreover, with respect to cap fund and its reported merchant account, it should be noted that in Mr. Campbell's declaration, which was who proposed of selling cap fund cap funds business or continuing that business with Mr. Campbell and Mr. Schara. And I'm referring to paragraph seven of Mr. Campbell's declaration, which is on ER 294. And what's interesting about this, it says Mr. Schara was physically present in Arizona when he made this proposal. Similarly, in paragraph 11. But you would agree, counsel, that without an evidentiary hearing, if the case is being resolved on the complaint and declarations that the any disputed issues of fact at this stage must be resolved in favor of here, the plaintiff, right? I would agree if there were disputed issues. So so I'm again, I'm looking at page paragraph three of the declaration, and he describes the merchant account as Nevada based. So regardless of where the company is incorporated, Nevada based merchant account. Why doesn't that work here at this stage? Well, even if we accept Mr. Schara's allegations as true that he merged the assets of cap fund into Sprott Financial, Mr. Schara does not dispute Mr. Campbell's declaration where he says in paragraph 18 that business in the state of Nevada for Sprott Financial accounts for less than 1% of the total revenue. That's an ER 296. Mr. Schara had an opportunity to object in his characterization to be inaccurate in any way. He did not. So while there may have, while if I understand Mr. Schara's allegation that Kaplan may have had assets, even if there were assets in Nevada, those assets were de minimis because he does not refute that Sprout's business was less than 1% of or that Nevada market was less than 1% of Sprout's But his allegation, as I take it, is that these activities in Nevada were intended to facilitate the entering into the contract, the trips to Nevada, the calls involving Nevada, the assets in Nevada, his algorithm, which was with him essentially in Nevada. I'm just having trouble seeing how at a motion to dismiss stage where we have to look at all factual disputes in the light most favorable to the non-moving party, why that doesn't work for the contract claim. Well, even accepting those allegations is true. When we look at the claims that are being asserted by Mr. Schara, and this is in his opposition to the motion to dismiss, he characterizes his six relate to the theft of Kaplan. In fact, for the first claim for relief, debt relief, it's with respect to his ownership interest in Sprout Financial, which is an Arizona entity, and his statutory entitlement to review Sprout Financial's books and records. Number, claim number five, which is for breach of contract. He says the breach of contract claim is based on Campbell locking Schara out of Sprout Financial. All of those activities that give rise to Mr. Schara's actual claims for relief are things that have occurred in Nevada. I mean, are things that occurred in Arizona, excuse me, not Nevada. And as we all know, the claims must be one which arise out of or relates to defendants form related activities. There is no dispute that when there were discussions about merging Kaplan, that those discussions occurred in Arizona and not in Nevada. If I may continue. So the district court properly concluded that Campbell's extremely limited contacts with Nevada did not give rise to Schara's claims. As mentioned, each of Schara's claims against Campbell are focused upon the ownership and operation of the Sprout Financial business in Phoenix, Arizona, and Campbell denying Schara an ownership interest and access to the books and records of the same. Campbell's declaration was unrefuted, and he attested that the party's prior negotiations consisted almost entirely of in-person meetings in Phoenix. And if you turn to Mr. Schara's complaint, he actually acknowledges this. It's the complaint paragraph 14, citing to ER 308, where he says a weekly company meeting for Sprout was held, and if Schara was not present in Arizona, Campbell would reach out to Schara in Nevada. Similarly, Mr. Campbell's declaration states in paragraph 11, ER 295, these conversations took place in Phoenix, Arizona, and over the phone while Mr. Schara was in Las Vegas, Nevada. Based on the four... Your time is up. Let me ask my colleague whether either has additional questions. Yeah, I had one brief item. You had focused on the 1% statement from your side. In the complaint, there's a statement at ER 308 that Campbell frequently traveled to Nevada, and they worked regularly with a sizable client venued in Las Vegas. Is that outside the 1%, or how would you respond to that statement? Well, it's... Well, they may have worked with a client, a sizable client. It's unclear what Mr. Schara believes to be sizable. We gave a concrete example that only 1% of the revenue for Sprout came from Nevada, and again, that was not disputed. Thank you. Any other questions? Okay. Thank you, counsel. We'll now hear a rebuttal from Mr. Kaye. Thank you, Judge Bitt. And I want to start with Judge Bennett's questions because I think a couple of them get to the key points here, is that at the pleading stage, Mr. Schara's burden isn't to provide evidence. It's to provide allegations establishing minimum contacts, and he's entitled to the benefit of the doubt in those allegations. So when I hear my counterpart say, Mr. Schara didn't dispute this fact, or Mr. Schara didn't dispute that fact, there wasn't an evidentiary battle required on the motion to dismiss because Mr. Campbell admits that he didn't request an evidentiary hearing. This may be a very different case if that was the situation, but as Judge Bennett indicates, that the key here is the allegations in the complaint. And I also want to address the express aiming element of the purposeful direction test, and Judge Bennett, your question about the torts and how those came about. Again, I think the best way to view this is that Mr. Campbell's act of deceiving Mr. Schara into transferring cap fund out was a sort of traditional con. Mr. Campbell first has to enter the state of Nevada to build up the appearance of Sprout, and to make Mr. Schara believe that he's going to be treated as an equal partner. And the way Mr. Campbell accomplishes that is exactly what Judge Boggs identified in paragraph 14, which is that Mr. Schara clearly alleges that Mr. Campbell physically entered the state to conduct this sort of deceptive scheme, but he also virtually entered the state on a nearly daily basis through emails, text messages, etc. And when we look at the Burger King case, those are sufficient jurisdictional context, not just for the contract claim, but also for the tort claims. And the idea that Mr. Campbell was expressly aiming his activities into Nevada, where he knew Mr. Schara resided. And so with that, we believe that you can resolve this case simply on the allegations in the complaint. And if needed, Mr. Schara's declaration provided in the opposition to the motion to dismiss. And we believe that's where the district court got it wrong. And so we're asking this court first and foremost to reverse the dismissal order based on the allegations in the complaint, and then secondarily, remand so that this matter can move forward. Thank you, Your Honor. That's all I have. I'm happy to answer any questions. Any other questions by my colleague? Hearing none, we thank both counsel for your argument in this case. The case of Schara v. Campbell is submitted. And the court stands adjourned for the week. Thank you, Your Honor. Thank you, Your Honor.
judges: Boggs, M. Smith, Bennett